We now will hear argument and call the three matters consolidated for argument before our court in Dianoias Eatery v. Motorists Mutual, Umami Pittsburgh v. Motorists Commercial Mutual, and Mark Daniel Hospitality v. Amgard Insurance. We've divided the time between two appellants counsel and between appellees to counsel, and we'll call upon Mr. Gerstein. Thank you, your honor. Jack Gerstein on behalf of Motorists Mutual Insurance Company in connection with- We are once again, as we did in the last argument, having some difficulties with audio. It is clear, but not loud enough. There's no distortion, but volume is a problem. So if you can speak more closely to the microphone or with more volume and timbre in your voice, whatever works. At risk of seeming to yell at the court, does this work, your honor? That's much better. Yell away. Much better. If that's okay. This is effective. All right, thank you. Jack Gerstein on behalf of Motorists Mutual Insurance Company and the consolidated appeals of the Dianoias and Umami cases. I'd like to reserve one minute for rebuttal. Granted. In the two cases at bar, complaints clearly state a claim for breach of contract, simply masquerading as a declaratory judgment. And you can see that, frankly, by reference to the complaints themselves. For example, in the Dianoias case in paragraph 32, they said motorists wrongfully denied claims by the plaintiff for recovery for damages caused by the COVID pandemic. They accused the defendant in paragraph 40 of, quote, a material breach of that policy. And they seek in paragraph 42 a declaration that they're entitled to damages and expenses and losses caused by the pandemic. One challenge for me here, Mr. Gerstein, and I think I understand your position with respect to masquerading and know where that term finds its providence. But as far as I know, this court has never determined in an insurance case or in any case like this that masquerading had occurred. So, I mean, let me ask you how the complaints that had been filed and implicate the interest of your client, how they're different from the one that we had in Reifer, I guess it would be Reifer, but I'll go with Reifer. Well, I said to my law clerks, it may depend upon the generation you came from. You know, the word Reifer certainly has some resonance for those of us who came of age in the 60s. But I don't think that's what we're talking about here. I was going to use German would be Reifer, but I'm Gerstein and not Gerstein. So, in any event, the answer I think is straightforward. First of all, I believe Reifer was a close case either way. I believe that Reifer was a close case either way, but at least in Reifer, the damages component, the court said had already been completely decided in unrelated prior case. So, literally, it was just a coverage case. That's the first point, or that is the point for the legal claim. In this case, though, I just want to be clear. This is first party insurance. So, when they use the word they want coverage for the losses they've claimed, coverage simply means payment. So, when you say I want a declaratory judgment that you owe coverage, that's just short speak for you owe monies. And in this case, you don't even have to take my word for it, and you don't even have to take your own word for what your eyes show when you read the complaints. Because when they filed these complaints, the plaintiffs on the civil action cover sheet, which is at page 64 and 734 of the appellate record appendix, said in the civil action cover sheet in response to the question, are money damages requested? They said yes. And if you want a further indicium here that this is not a true declaratory judgment action, but simply one masking as such, all you have to do, I think, is look at paragraph 46 of the DeAnnoyis complaint. The two complaints are almost identical in this case. It says, a judgment of this court in this action will also be useful for the purpose of clarifying and settling the legal relations at issue between the parties. But you know what? Let me just pick up on that, because there's a real awkwardness to declaratory judgments in a lot of ways. But in general, in American jurisprudence, we have a law and a rule against claim splitting. And it generally means if you've got a grievance against someone related to a transaction or occurrence, you have to bring all the claims and seek all the remedies that you can arising out of that same transaction or occurrence. So that's the general rule in American law. And then we have declaratory judgment statutes that say, yeah, forget that rule. You can seek a declaratory judgment first, and then you can come back later any time you want. And we aren't going to treat this any other way. So at one level, why do we even need to reach the masquerading point? Why can't we just say, look, they only want declaratory judgment. It's an unusual coverage case, because normally it's the insurer that wants to seek the DJ. But here we have an insurer. They want to do it. It's strange. Why not just go for a breach of contract? It feels so much like claim splitting. But declaratory judgments is an exception to our trend. They allow it. And because they allow it, who cares if it's masquerading or not? If they want to go piecemeal through a claim, doesn't the DJA, federal and state, allow this? And let me just add one additional principle that accompanies all of this, and that is the straightforward and well-recognized principle that the plaintiff is always a master of her own complaint. Those are true statements. But also, I think federal courts and courts throughout the country recognize form over substance. You still have to look at the substance. And certainly, you're right. I don't believe this court has found a masquerading situation. But they went out of its way to note that it could occur in the reefer case. I mean, you made that point. And this is that. It has the word declaratory judgment label slapped on it. But again, the civil action cover sheet says they're seeking monetary damages. All right. Well, is the cover sheet technically a pleading? It accompanies the pleading. I mean, if we recognize, as we do, that just denominating a pleading as something is not dispositive, certainly we can hardly regard a cover sheet as dispositive as well. But shouldn't we look, in looking at the complaint itself, shouldn't we pay attention to the prayer for relief? And was damages sought in the prayer for relief in either of the two cases you're saying? Please keep your voice up. I'm sorry. Again, I apologize. A declaration that the defendant owes the plaintiff money is no different than asking for a judgment for damages. It is. It is different. Judgments give lien powers. They give all of these host of goodies to the winner that a DJ gives its own set of goodies. But it's very, very different. And at one level, though, you don't need to win on the masquerading point. And so at one level, why not just say, you know what, the declaratory judgment is an exception to the claim splitting rule, strange as that is. Plaintiff is the master of the complaint, strange as the cover sheet is. Now let's talk about whether or not this case still belongs in federal court or in state court. Fair point. The answer is it doesn't, because even if there were discretion here, it was clearly abused in this context. And just to be clear, there are literally 32 federal court decisions in Pennsylvania alone that have decided the exact issue that sub judice here. There are 275 opinions in federal courts throughout America. Instead of preponderating those other decisions, I mean, as I said to my law clerks a few days ago when we were talking about these cases, you want to be in federal court. The other side wants to be in state court. We get it. I've been around too long. I get it. But we have to find a principled way in which we analyze how each of the three district judges got to the result that they got to. So shouldn't we actually be talking about the factors that those judges considered should have considered and discussed in a robust fashion and determine in that way whether they were right or wrong, whether there was an abuse of discretion? I'm happy to do that. And the answer is there was, as I'm sure the court is well aware, neither of the trial courts nor the district courts. And the reason is they all either are neutral or favor leaving it in federal court. The one factor that got passing attention from the both the district courts and in the briefing is the concept that this involves some novel issue. But it doesn't because this involves contract interpretation. That's all. And the law in Pennsylvania and New Jersey both is well applying the literal words of the contract using established principles of law. There's nothing novel that requires special intervention of the state courts. And the reason I got ahead of myself, Judge Smith, when I mentioned all the cases that are pending, I just think it does a disservice to all those courts and cases to suggest that somehow this really should be decided only in the state courts. It's something in the province of the state courts. This is something federal courts do every day, construe contracts using established law and the words. And just because one word in a contract hasn't been construed. I mean, virus is a virus is a virus. Construing that word is not something peculiar to the state court. But isn't insurance being a particularly regulated industry and regulated in each state by its insurance commissioner? Isn't the determination of state law on insurance something that should be decided at the state level rather than at the federal level? No, I think most courts have recognized that it's one thing to talk about specific areas where insurance companies are regulated, maintaining reserves, and there are certain other requirements that go to the regulation. But otherwise, just the other day, for example, a district court in Illinois used to certify this saying, quoting the seven circuits saying insurance, seven circuits saying that the insurance is maybe regulated. But when you're dealing with just a contract issue, it's an independent contract between two private parties. And those principles do not apply. Well, let me let me throw in another truism, if you will, another principle. And that is that we have an abiding responsibility to exercise our properly invoked jurisdiction. And I don't think there's a question here, a dispute that there is properly diversity jurisdiction. So I understand Judge Roth's point to be one essentially of public policy, of state policy. But it seems to me that one important aspect of this case, a very important aspect of this case for us is in view of our responsibility, always to responsibly exercise our jurisdiction, if it is proper, that we be carefully examining the grounds for abstention here that was exercised were that were identified and the basis for determinations by judges to I'd like to focus on some of the factors here. And I'd like all of counsel to do that, because I do have some doubts as to whether in some or maybe even all of the cases, the factors were adequately and fulsomely addressed so that we can appropriately exercise our responsibility in reviewing those district court exercises of discretion. I will address that. As this court has said, the first and foremost factor consider is are there parallel state proceedings? And the answer unequivocally here is no. So there's a high presumption that the court should have kept jurisdiction absent some compelling other factor. That's the first. And then if you go through it, the factors in reefer would a controversy. Even the plaintiffs recognize that factor, I don't think applies one way or the other here. Number two, maintaining actions, the district court would have been geographically convenient. It would have been in this case, at least as convenient. Certainly convenience was not a factor either argued or ruled upon by the court. And again, it's not that the court missed it. The plaintiffs weren't arguing any of those factors, which is telling. The third factor is the so-called novel factor. And that's just frankly not true. We can address that when the court wants. The fourth factor is, is there a more convenient remedy? Should you go to state court? No, you can give full relief in this case. In fact, you don't even need a declaratory judgment because the decision on coverage is going to have race judicata and all issues would be resolved. There is no big issue. Fifth point, there's no reason for restraint because of parallel proceedings because they don't exist. Again, that's a big factor weighing in favor, keeping jurisdiction, no threat of duplicative litigation, because again, there's no parallel proceedings, no indication of procedural fencing. Here, I would argue there's procedural breach of contract. I mean, thinly disguised as a declaratory judgment. And again, I mean, but again, paragraph 46 of their complaint, you know, it literally makes, says we'll also give this benefit. The declaratory judgment is a throwaway, even in their own complaint. And then finally, the eighth standard is there's no duty. Is duty defend implicated? No, this is straight first party coverage. So there are no parallel state proceedings. The court is eminently able to do it. As I said, 32 courts have already done it here in Pennsylvania and 275 throughout the country. And literally, it's just applying literal wording of a contract to establish contract interpretation. There's no deference to be given to the state on that. All right. We, as we've been doing all morning, we're well behind the time. We'll have you back on rebuttal, Mr. Gersten. Mr. Feder. Thank you, your honor. Can you hear me? Not well. I'll speak again. I think one of the problems is standing. You know, if you're sitting, I think you're closer to the microphone. Oh, you weren't talking about constitutional standing, Judge Roth. I thought I was in a different case at first. All right. And I can speak up as I go. Yes, yes. I can see you coming loud and clear. Yep, that's much better. Thank you. Okay, great. May it please the court, my name is Daniel Feder for Appellant Amgard Insurance Company. I would also like to reserve one minute of my time for rebuttal. As Mr. Gersten was just addressing, the district court decision should also be reversed for the reason that it abused its discretion in abstaining from hearing this case. Plainly, when two different decisions are reached in identical cases, there has been an arbitrary result and the court has abused its discretion. At least 20 courts in the District of New Jersey and more than 30 federal district courts in Pennsylvania have reached these exact claims on the merits, including in solely declaratory actions, dismissed those cases, and have been willing to exercise jurisdiction. But doesn't that rest on like a false premise in some ways? It assumes that there must be an abuse of discretion. And so there's many, many, many areas that district courts have discretion. They can set the time period for discovery. Some like 120 days, some like 180 days, some like 150. But the fact that they reach all different results for very, very, very similar cases doesn't mean that any of them have abused their discretion. So it strikes me that your argument, well, your statistics are overwhelming. That's the strong part of your argument. It's not that the uniformity, lack of uniformity, must therefore be an abuse of discretion. Abuse of discretion contemplates that two separate opposing results can both be within the permissible bounds of discretion. Well, two different results could be within the bounds. Here, the question is specific to the third reefer factor, which the district court found was the controlling factor here. Well, the many decisions throughout the federal courts, including by the same district court judge, Gillistrate, is that plainly there was no unsettled or novel question of state law here. Instead, what we have, as Mr. Gerstein mentioned, is a plain, straightforward application of unambiguous contract language to the facts before the court. And the court could not, the district court below and appellees could not claim that those principles of law have changed in the past six months. Looking at the decisions that have been issued, again, including by the district court judge, plainly illustrates this fact. They're resolved on the statement of law. Well, I mean, let me just push back because I think your statement is again too broad. It's perfectly fine for an uncertain state law question to be later resolved. So it can be that at the time of one ruling, the question was unresolved at the state level. And at a subsequent point in time through an action of the highest court of a state or otherwise, that uncertainty is evaporated. But again, I think you've pushed too hard because I think the point that you need to make is was there uncertainty at the time of these rulings, not is there uncertainty today? That's correct. And the answer is that there was no uncertainty at the time of the ruling by the district court below remanding this case. What the rulings that have been issued since then and the overwhelming consensus that there are no claims on the merits here illustrate is that fact that these claims were not were settled. These legal concepts were settled at the time of this decision because none of the decisions resolving these claims have been able to identify or have identified close questions of law. Instead, they resolve the cases in front of them based on pure black letter principles that are long settled within New Jersey and Pennsylvania state law. And plainly, this is the case because the district court judge here just a few weeks ago in the Casino Beach Pier case stated, and I quote, that case does not involve unsettled questions of state law rather. And again, I quote, resolution of this dispute involves a straightforward interpretation of the policy's language. Those observations. Let me let me let me stop you there. And this and that is this. We have seen the invocation of several terms of two terms in particular throughout these cases. One is unique and the other is issue or issues. What is it that is supposedly unique here? Because it seems clear to me that this panel should be concentrating on questions of law, on legal issues, and therefore the highly unusual, even unique nature of this virus or this pandemic is not really what we ought to be focusing on. That instead, we ought to be focusing on an issue or issues and that those issues necessarily require us to focus on the language of this exclusion provision within the contract. Is that is that your position? I mean, is that what what should be our focus? Yes, that's precisely our position. The only unique circumstance that the district court identified in the Mark Daniel decision below was that the covid pandemic is admittedly a new situation, a novel situation. But federal courts and all courts deal with unique sets of facts and apply settled law to them on a regular basis. And that is the question here. The question, as I mentioned, that is before this court is whether an unambiguous and straightforward exclusion applies to the facts before it. And that's a question that federal courts are well equipped to handle. And there is no reason why the state courts are better suited to address it. Similarly, there is nothing unique about the existence generally of exclusionary provisions in liability insurance contracts, right? No, there is not. In this case, in the first party. And in fact, courts are called upon to address those issues have been. I haven't made a global search of opinions, but I know they exist. Am I correct in that? Yes, they many of them exist, many of them construing this precise exclusion at issue in this case, including, like I mentioned, the many decisions from within the circuit that have done so based on the long settled principle that the plain language of the exclusion applies to the facts that that are covered within it. So that is not a unique or. Judge Ross, I want to give you an opportunity to get in here with with Mr. Fetter with any questions. Yes, well, let me ask you, in your opinion, then the issue is the language of the policy rather than the issue of whether the damage here was caused by an order of the state government as opposed to being caused, in fact, by the virus. I gather that that's that's the balance of the two issues. And you're saying that that there is no validity in the claim that the damages here were caused by the state order as opposed to being caused by the virus. Whether the loss claimed falls within the scope of the exclusion is decided by the exclusion's language. And here the exclusion states that it applies to any loss caused directly or indirectly by any virus, regardless of any subsequent causes that contributed. And the 20 courts within the District of New Jersey have applied this is the virus itself or the orders that were issued in direct response spatially to the virus. The virus exclusion plainly controls there. So once again, we come back to the question of does unambiguous plain language of the exclusion apply in this case, which is a long settled question of state law that the federal courts are well equipped to address. Well, if New Jersey law is is going in your favor, what's the problem with having these cases in the state court rather than the federal court? The problem with having these cases in the state court is that as this case is brought pursuant to the diversity jurisdiction where Amgard is an out of state litigant, having claims brought against it by an in-state litigant, it has a constitutionally protected interest to a federal forum. And vindicating that interest, I think, is what is spoken to in the masquerading point. But it is also directly relevant to the abuse of discretion from the district court that here, Amgard and motorists have and should have access to the federal courts to hear these claims as is protected by the constitution and the statutes. I would also like to briefly discuss. Let me ask Judge Phipps if he has any other questions because once again, we're over our time. I know I do not. Thank you. Thank you. We will have both you and Mr. Gerstin back on rebuttal, Mr. Fedder. Mr. Ferreira. Thank you, Your Honor. Judge Roth really stole my thunder a little bit there by saying what's actually going on in the state of New Jersey. Sometimes I wonder when I prepare for this argument whether I want to win or I want to lose. Judge Hurd in Mercer County has literally granted each and every motion to dismiss. My office has close to 30 of these cases we took on. We took the chance on behalf of these business owners. And Judge Hurd, and I respect the man greatly, but he's dismissing everyone. So why Mr. Fedder and Mr. Gerstin want to be in the third circuit? We don't really care on this panel why. We need to employ a respectable form of analysis. In my view anyway, what I'm focusing on really is whether the abstention by all of the three district judges was a correct exercise of their discretion under our jurisprudence. My colleagues may have different focuses here, but I'm curious to follow up on a question I previously asked. Your adversaries were one of them. What is unique here and what or issues should we be focusing on? Because it seems to me that if we have diversity jurisdiction properly being exercised, that unless you or a district judge can draw our attention to some basis for a state court applying different rules of interpretation to these exclusionary provisions, or in this case, that which applies in the case that you're representing, that there should be no difference. There should be no basis for a district judge unless there are bases found in going through the rifer factors. Your Honor, thank you. Clearly, I don't believe it was an abuse of discretion by Judge Wolfson. What she's done after that and what other courts have done were not, as Judge Phipps had said, did not yet happen. At the time the motion was decided, it was unsettled in New Jersey as to how these new policies or these new arguments concerning policy language. Let's get to that. What I think is unique is whether or not the physical damage aspect of the language of the policy covers what is going on. There's a difference between a business not being able to do business because of a government order versus it being shut down as a result of half of the employees had COVID and therefore the business had to be shut down. But isn't the breadth of the language contained in this exclusion an answer to that question, a clear answer to that question? It's not merely the infection. It's not merely the effect of the virus itself as a virus, but the language would permit, would it not, other causative factors such as government regulation. Judge, I believe that government regulation, this is unique in the fact that this is a first with respect to businesses being shut down by government regulation. And there's nothing in history that I can point to that is similar to this situation, which is why the state should have the autonomy in making these decisions on their own. Well, let me just pick up on that and let me try to, I'll be very forthright with you. I'm going to ask you about what I think is the weakest part or the weakest part of your case. And that is that so many of these abstention doctrines take place in the presence of parallel state proceedings and there's this notion of federal courts don't want to get in the way of something that state courts or state administrative agencies are already doing, whether it's a criminal matter, whether it's an administrative matter, whether it's a novel and complex issue. We'd rather let them get first crack at it when there's parallel proceedings. And I don't think there's any dispute that there's not parallel proceedings here. And as we look at these rifer factors, they only are articulated after we begin to focus first on whether or not parallel proceedings exist. And so the absence of parallel proceedings really, really hurts your case. I think that's your biggest weakness as I tee it up. And I want to give you a shot at kind of speaking to that point, because maybe I've got a blind spot that you're going to tell me that's a weakness or something. Judge, no, I understand the argument. I just to me, because the cases are so similar, the many cases that are out there are so similar. And the language in the various policies is quite similar. You do have parallel proceedings. It's not in the same manner. It's not the same matter, excuse me, but they are parallel and there needs to be uniformity. And because the state courts in New Jersey and I'm sure other states have gone to the lengths that they have, ultimately, it should be teed up for the appellate division in New Jersey to make a determination as to whether or not forget about the motions to dismiss if you get past the motion to dismiss whether or not this is something that there should be uniformity on. And so let me just interrupt and let me see if I can kind of just encapsulate what your point is. As I hear you, you're saying is there's not technically a parallel state proceeding, but all of the interests that would be accounted for by the parallel state proceeding factor are present here due to the wealth of other state proceedings that are going on. Is that kind of the strongest form of your argument? Said much more eloquently than I did. Yes. Right. Absolutely. And with respect, I just want for the record, Mr. Fetter's arguments concerning excuse me, Mr. Gerstein's arguments concerning a legal claim versus a declaratory judgment really are even tougher in my case because they were never raised below. And that's been pointed out in our papers. And I don't need to reiterate that any further. But unless the court has any questions, that's my presentation. Judge Roth, any questions? I have no further questions. Thank you. All right. Thank you very much, Mr. Farr. Mr. Haggerty. I think you're muted, Mr. Haggerty. I'm sorry. I thought they would unmute me. May it please the court, James Haggerty for the appellees in Umami and Denoyas. In this case, your honors, the district court did not, district courts did not abuse their discretion. It is for that reason that we are asking that the decision of the district courts be affirmed. In this case, the district court did not abuse the discretion. In this case, contrary to the arguments that were made, the reefer factors were in fact discussed in detail, particularly in Judge Fisher's decision. In her decision, she specifically stated that factors 1, 3, 4, and 5 argue in favor of remand of this matter. Uh, this is a unique state court issue. Before we even get to the issue of the exclusion, we have an issue of the insuring agreement. And the question is, does a pandemic cause direct, is it the policy requires, because this is a property policy, direct loss of or damage to the property? That's the first question. That's a unique state question that is eventually going to be resolved by the Pennsylvania Supreme Court. In fact, there are a number of cases addressing those issues before this court. And I believe that the, the parties in those cases are asking that those cases, asking this court to file an application for certification of those issues to the Pennsylvania Supreme Court so the Pennsylvania Supreme Court can address and resolve those issues. As your honors know, this court routinely certifies and asks for certification of unique state court issues to the Supreme Court to review and address. The Supreme Court of Pennsylvania routinely accepts those certifications and resolves those issues. Well, yeah, you, you raise a good point and one that occurred to me the other day. And in fact, uh, and it shows you how dependent I am on my law clerks from my recollection, because I told them that I was going to come out of the box and ask right away at the beginning of this oral argument, if anyone had sought certification, uh, and to the best of my knowledge, no one has. So perhaps, uh, uh, you can respond and, uh, perhaps, uh, the, uh, to, to my question, why that request has not been made. It doesn't appear anywhere in the briefing and that's where we usually get it. Exactly, your honors. And I, I had, I had considered that, but the nature of the, in fact, I had some forms I haven't looked in here. Pretty stark omission though, isn't it? If you really, really, really want to be in state court, why don't you come right out and ask us, first of all, you know, certify this question. Well, because the real question that has to be certified is the underlying legal issues. They're the issues we want to get addressed. If those issues were before this court, not just the issue of the, uh, refusing to exercise jurisdiction over a declaratory judgment matter, that's really not the heart of these cases. If the issue, if, if in fact this court reverses the district court and we adjudicate that issue in the district court and it comes back before your honors, you can be certain that we're going to request that it be addressed by the Supreme Court. I'm not so certain that a, a question of jurisdiction, a question of refusing. Let me just jump in. I understood Chief Judge Smith's question, not to be certify the jurisdictional question, but certify the novel question, the, the, the, the, the novel question of state law. And, and, and that's, as he says, that's, that's a bit of a, uh, yeah. Yeah. Because when there is a novel question of state law and people are in federal court, they usually aren't shy about, about asking for some degree of certification. Now, now there's a whole dynamic there that, that might not make that always the most successful approach, but, but putting that aside, the ask is usually made. Well, and that ask, that ask becomes a little bit more realistic to me, if not my question more obvious, when there has been a petition to the Supreme Court to exercise its King's bench authority, um, maybe a nudge from us would have some effect. We, we, we, we've sought King's bench in other cases and the, the, the, uh, court has refused to exercise its King's bench power, but we didn't ask for certification here because we're not, the Supreme Court of Pennsylvania is, is in my view, is not the proper forum to adjudicate whether or not a district court abused its discretion in refusing to remand it. That, that, that's not the type of issue that the Supreme Court of Pennsylvania gets involved in. The Supreme Court of Pennsylvania will get involved in whether or not there is coverage for these losses under policies issued in Pennsylvania to Pennsylvania residents, because it is, it is an overwhelming issue affecting thousands of insurers. That's the type of issue. And that's the type of issue that, that will be sought to be taken before the Supreme Court. Uh, we, we have a case in, in the Superior Court right now, where it's on appeal from the Court of Common Pleas Allegheny County on appeal to the Superior Court. And we were planning to file a motion for King's bench to have them take it up sooner rather than later. The Pennsylvania Supreme Court is going to address these issues of insurance law in Pennsylvania. Uh, they're, they, these same issues are presented in every case. These are ISO policies, insurance services. So, so, so let me, so let me just, let me just ask this question. Um, and this kind of gives a temporal scope to this case. Once those questions have been resolved by state court authorities, then there's no problem with cases like these being in federal court, if they've been properly removed and if they properly trigger diversity jurisdiction. So this is kind of a, you know, an interstitial sort of interregnum sort of time period where we don't have an answer. Someday we will probably. And at that point in time, it's too late. There's no question then that federal courts, this can be in federal court, but, but maybe at the time these decisions were made, it, it, it, it was uncertain, but someday I think you'd concede this, your argument evaporates. Well, judge, there won't be any cases. There'll be nothing for you to hear because the Supreme Court of Pennsylvania will have resolved the issue. If the Supreme Court of Pennsylvania addresses and resolve the issue. And if they rule against the insured, well, then I'm not going to start another lawsuit to try and win it because they have resolved the issue. There will be no case in controversy to bring before this court. The, those are the issues that need to be addressed and resolved by the Pennsylvania Supreme Court. And they will be addressed and resolved eventually. And that's why we believe that that's the primary reason in addition to factors one, three, four, and five, and other cases have done the same thing. Judge Prater has a decision out of the Eastern district and she focuses on factors one, three, and five. And for, for the very same reasons, arguing that this is a declaratory judgment action, the prayer for release only for a declaration of coverage. Let me just, let me just ask you one other question. And this is my final question for you. And it relates to the notion that Chief Judge Smith was referring to. There are so many Supreme Court cases that say federal courts have a virtually unflagging obligation to hear cases within their jurisdiction. And that kind of makes sense because federal courts are courts of limited jurisdiction. And so once litigants climb over that limited jurisdiction hurdle, courts, there's, there's a virtually unflagging obligation to hear those cases. And so when we look at all of these factors, we have to look at those. We can't just forget about our virtually unflagging obligation and go straight to the factors. That virtually unflagging obligation is a gradient upon which we review these factors. And it makes it a lot harder to win on all these factors. Wouldn't you at least agree with that? Well, but there's an exception to the virtually unflagging, which was addressed by this court in, in, in, in the Rarit case. The Rarit case recognized that a declaratory judgment action is different than a legal or compensatory action. And they are different and they are separate and distinct. And here we only have a declaratory judgment action. And that's the Burlhart cases and the Colorado River cases they talk about that unflagging obligation. However, there is an exception and the exception is where there is a discretionary. And it's a narrow exception. It's a very narrow exception. It is. It is a narrow exception. But, but this falls squarely within that narrow exception because it is a declaratory judgment action seeking only declaratory release. There is no request for specific damages. There's no request for specific amount of money in this case. It's for coverage. We're asking for coverage and that is an exception to the unflagging that in the, in the unusual circumstances that can be met that are referenced in Colorado River, which are, which are not in this case. So, Mr. Haggerty, let me ask Judge Roth if she has any questions of you. No, no, I don't. Not at this time. Thank you. Judge Phipps. I know nothing further. All right. Thank you, Mr. Haggerty. I'm going to return to counsel for the appellants for brief rebuttal. Not going to extend the clock too much beyond the time reserved. Mr. Gerstein. Thank you. I'll be very brief, your honor. First of all, I just looked at the order in the DNOIA case. She doesn't cite anything other than the so-called novel issue. I, I don't understand what counsel is talking about. Ironically, the fifth factor that he said she relied on is, is parallel state proceedings. There are none. And to the extent counsel has, prior counsel argued that, well, they're different. Someone squarely rejects that argument. So, not a parallel proceeding as this court has held. I'm going to say no more simply because I have to say, I think the panel is asking the right questions. You're thinking the right thoughts. I don't think it's for me to educate when you see what you're doing without my help. Well, thank you. Every, you know, every now and then, and I'm only speaking for my, myself, a blind dog can find an acorn. So, Mr. Fainter. Thank you, your honor. The reefer analysis begins, as Mr. Gerstein was saying, with the question of whether or not there is a parallel proceeding. And here there is not. Mr. Ferrara said that the other cases between other parties present the same considerations as a parallel proceeding. But this court and the Brillhardt case from the Supreme Court identify those questions as gratuitous interference with ongoing proceedings between the same parties and efficient judicial allocation of resources. Those questions are not present here where there is no parallel proceeding. The district court identified the third and the fifth factor as weighing, as overcoming the presumption in favor of jurisdiction. The third factor, which we've already addressed plainly, did not. The fact that the district court could not identify a novel question of state law shows that. And Mr. Haggerty's explanation of question to be certified to the Supreme Court of whether or not there is coverage under the language of the policy further illustrates that. Finally, the fifth factor looks to whether there is a parallel proceeding between the same parties. District courts regularly ask whether it was the same parties, and that is not the case here. So, plainly, there is no reason to overcome the presumption in favor of jurisdiction and abstain in this case. Thank you. All right. Thank you, Mr. Gerstein. Thank you, all of counsel. These cases, we all know, have proliferated. We all know they arise out of considerable difficulties, both social, economic, and for other reasons as well. Not least of which is, I have a hell of a time finding a decent place to eat when I'm in Philadelphia these days. So, I do hope that we all reach some resolution to the pandemic and all of its effects sooner rather than later. Thank you. We'll take the case under advisement, and this matter then is concluded.